UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JUAN JOSE VALENZUELA, JR.,<br><br>　　　　Defendant. | Case No. 1:17-cr-00244-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Juan Jose Valenzuela Jr.'s Motion to Take Judicial Notice of Sentencing Commission's New Guidelines or Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 193. The Government has not filed a response. The matter is ripe for the Court's consideration.

Having reviewed the record, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho. Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

On May 14, 2019, after pleading guilty to one count of conspiracy to distribute methamphetamine and marijuana, the Court sentenced Valenzuela to 235 months

incarceration with five years of supervised release to follow. Dkt. 158, at 2–3.[1] The sentencing guideline range for this case, as calculated by United States Probation, was 292 to 365 months, but the Court adopted a guideline range of 188 to 235 months to give Valenzuela the benefit of the "mixed" methamphetamine guidelines as opposed to the "actual" methamphetamine guidelines. Dkt. 153, at 14; Dkt 171, at 11, 30. Valenzuela is currently incarcerated at Federal Correctional Institution Florence ("FCI Florence") in Florence, Colorado, with an anticipated release date of April 11, 2034.

On May 15, 2020, Valenzuela filed a Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. Dkt. 164; CV-246, Dkt. 1.[2] The Government filed an opposition to the motion (CR-246, Dkt. 15) and Valenzuela subsequently voluntarily dismissed the action (CR-246, Dkt. 17).

On April 14, 2023, Valenzuela filed the instant Motion to take Judicial Notice. Dkt. 193. As required, Valenzuela first petitioned the Warden at FCI Florence for release. *Id.*, at 2. There is no evidence submitted to indicate that the Warden has responded. Thus, because at least 30 days have passed since the submission of the request, Valenzuela may petition the Court for relief. 18 U.S.C. § 3582(c)(1)(A). Valenzuela bases his request on the proposed amendments to the U.S. Sentencing Commission's sentencing guidelines expected to take effect on November 1, 2023.[3] *Id.* at 1. Valenzuela also urges the Court to

---

[1] At the time of sentencing, Judge Edward J. Lodge presided over this case. Due to Judge Lodge taking inactive senior status, the case was reassigned to the undersigned on May 21, 2020. Dkt. 165.

[2] In this Order, "CV-246" is used when citing to Valenzuela's civil case record in 1:20-cv-00246-DCN. All other docket citations are to the record in the criminal action.

[3] Valenzuela also argues that he should have received a lesser sentence because his first plea agreement was for fourteen to seventeen years of incarceration. Dkt. 193, at 1. Valenzuela first entered a plea of guilty

MEMORANDUM DECISION AND ORDER - 2

consider his health concerns and his exemplary conduct since becoming incarcerated. Dkt. 193-1, at 9–18.

### III. LEGAL STANDARD

Valenzuela seeks compassionate release under the First Step Act ("FSA"), amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[4] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[5] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable. *Id*.; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

---

without a plea agreement (Dkt. 97) and then withdrew that plea (Dkt. 123) before signing a plea agreement with the Government (Dkt. 138). That plea agreement did not contain any promises to Valenzuela about what his sentence would be. The Court will, therefore, focus its analysis on the sentencing guidelines and will not address the plea agreement further.

[4] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[5] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Valenzuela submitted a request for Compassionate Release with the Warden at FCI Florence on September 19, 2022, and there has been no response. Dkt. 193-1, at 1. Because Valenzuela filed his present Motion 30 days after submitting his request to the Warden with no response, the Court finds that he has exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

Having determined that Valenzuela has exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Valenzuela bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and

compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). This assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. As such, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13 when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—was momentarily left open. The Ninth Circuit has recently answered that question in the negative. *See United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (holding that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."). Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*

Valenzuela argues that his exemplary behavior since being incarcerated and the proposed amendments to the U.S. Sentencing Commission's sentencing guidelines

constitute "extraordinary and compelling reasons" justifying compassionate release under subdivision (D) of U.S.S.G. § 1B1.13. Dkt. 193. Valenzuela further argues that his health concerns necessitate compassionate release under subdivision (A)[6] of U.S.S.G. § 1B1.13.

The Court first considers Valenzuela's conduct since becoming incarcerated.

While incarcerated, Valenzuela has completed an apprenticeship to become a peer specialist, completed training to become a suicide watch inmate companion (and received a certificate of appreciation for his work in that role), completed the Non-Residential Drug Abuse Treatment Program, completed the Anger Management program, completed the First Step Act Start Now course, completed the Drug Abuse Education Course, completed a course on Earth's Place in the Universe, and completed CR Participant's guide one, two, and three. Dkt. 193-1, at 9–18. While the Court finds Valenzuela's conduct commendable, these certifications do not constitute an "extraordinary and compelling" reason for compassionate release.

---

[6] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:
    (A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)    The defendant is—
(I)    suffering from a serious physical or medical condition,
(II)    suffering from a serious functional or cognitive impairment, or
    (III)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

The sentencing commission's applicable policy statement clearly outlines that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" to grant early release. U.S.S.G. § 1B1.13 cmt. n.3 (citing 28 U.S.C. § 994(t)). While courts have occasionally granted early release based upon a successful showing of rehabilitation when combined with other factors, the evidence of rehabilitation itself must rise to the level of "extraordinary and compelling."[7] Valenzuela has not submitted evidence to indicate any such efforts here.

The Court next considers the proposed amendments to the sentencing guidelines.

It is Valenzuela's contention that were he sentenced today, he would receive a lesser sentence due to the proposed amendments to the guidelines. This argument fails for two reasons. First, the proposed amendments to the sentencing guidelines will not take effect until November 1, 2023. It is unclear whether any of the adopted changes will be made to apply retroactively to cases like Valenzuela's, where sentencing has already taken place. While the Court will take judicial notice of the proposed amendments, the sentencing commission's applicable policy statement instructs courts to "use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a).

Second, Valenzuela has already received the benefit of a lesser sentence because the Court accounted for the disparity between the "mixed" and "actual" methamphetamine

---

[7] In *Rodriguez*, for example, the court found the evidence submitted in support of the defendant's rehabilitation efforts was "nothing short of remarkable." 492 F. Supp. 3d at 311. The defendant submitted a collection of letters from friends, family, fellow inmates, and, most importantly, from 27 prison staff members attesting to his exemplary work ethic, kindness, and overall attitude that had remained consistent over the course of a 20-year sentence. The court there felt the overwhelming evidence the defendant provided regarding his rehabilitation, *combined with* the defendant's health risks and the new prison conditions, were compelling enough to grant early release. *Id.*

MEMORANDUM DECISION AND ORDER - 7

guideline ranges. Dkt. 159, at 3. The guideline sentence for Valenzuela's offense using the guidelines for "actual" methamphetamine was 292 to 365 months. *Id*. Instead, the Court considered the guideline range for "mixed" methamphetamine, which was 188 to 235 months. Dkt. 171, at 11. The Court sentenced Valenzuela to 235 months incarceration with five years of supervised release to follow. Dkt. 158, at 2–3. This is within the "mixed" guideline range and is 57 months lower than the minimum end of the "actual" guideline range. Dkt. 171, at 30. In sum, Valenzuela already received the benefit he now requests. There is nothing in the proposed amendments to the sentencing guidelines that would warrant any further variance.

The Court next considers Valenzuela's medical concerns.

Valenzuela makes vague reference to "numerous" health issues in his Motion, but he does not specify what those issues are or why they justify compassionate release. Dkt. 193. Valenzuela submitted some medical records indicating that he has had several x-rays of his lower back, left shoulder, and left knee, but it does not appear that the results of those x-rays are abnormal. *Id*. The physician in each case seemed to indicate that results were "mild", "unremarkable", and "normal for age." *Id*. The Court does not find that these x-rays qualify as an "extraordinary and compelling reason" justifying compassionate release.

Finally, the 18 U.S.C. factors weigh against Valenzuela's release at this time.[8] Valenzuela has failed to demonstrate how release, after having served less than one-third

---

[8] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

    (2) the need for the sentence imposed—

MEMORANDUM DECISION AND ORDER - 8

of a sentence for a serious drug-related offense, reflects the seriousness of the offence, promotes respect for the law, and provides just punishment for the offence. As outlined in the Presentence Investigation Report, Valenzuela conspired with three co-defendants to distribute 2.1 kilograms of methamphetamine and 3.7 kilograms of marijuana, while he was in custody on unrelated charges. Dkt. 153, at 4–5. Additionally, Valenzuela acted as an organizer or leader in the conspiracy and that role is reflected in his sentence. *Id*. at 6. It is the determination of the Court that the public is currently best protected by Valenzuela's continued incarceration. As such, all four factors set forth in U.S.C. § 3553(a)(2) weigh against releasing Valenzuela early.

In sum, the Court finds that Valenzuela has exhausted his administrative remedies. However, he has failed to demonstrate an "extraordinary and compelling" reason for his release and has failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. The Court commends Valenzuela for his rehabilitative efforts while incarcerated, but those alone do not warrant release. Furthermore, the Court already gave Valenzuela the benefit of a lesser sentence to account for disparities in the guidelines, and there is nothing in the proposed amendments to the

---

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

guidelines that warrants any further variance. Weighing all relevant factors, the Court cannot depart from its prior sentence and release Valenzuela at this time. Accordingly, the Court must DENY Valenzuela's motion.

<h2 style="text-align:center">V. ORDER</h2>

The Court HEREBY ORDERS:

1. Valenzuela's Motion for Compassionate Release (Dkt. 193) is DENIED.

DATED: August 3, 2023

David C. Nye
Chief U.S. District Court Judge